## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ESTATE OF SHAWN MORCHO,** | : CIVIL ACTION |
| **BY AND THROUGH YAHMAE CARSON** | : |
| **AND ASONGWED GEORGE MORCHO,** | : **NO. 2:22-CV-03245-NIQA** |
| **AS ADMINISTRATORS OF THE ESTATE** | : |
| **OF SHAWN MORCHO** | : **JURY TRIAL DEMANDED** |
| | : |
| **Plaintiffs,** | : |
| | : |
| **v.** | : |
| | : |
| **YEADON BOROUGH** | : |
| 600 Church Lane, Yeadon, PA 19050 | : |
| **and** | : |
| **SHAWN BURNS** | : |
| Yeadon Borough Acting Chief of Police | : |
| 600 Church Lane, Yeadon, PA 19050 | : |
| **and** | : |
| **MATT BARR** | : |
| Yeadon Borough Police Officer | : |
| 600 Church Lane, Yeadon, PA 19050 | : |
| **and** | : |
| **FERGIE INGRAM** | : |
| Yeadon Borough Police Detective | : |
| 600 Church Lane, Yeadon, PA 19050 | : |
| **and** | : |
| **LEAH CESANEK** | : |
| Yeadon Borough Police Detective | : |
| 600 Church Lane, Yeadon, PA 19050 | : |
| **and** | : |
| **JOSEPH HOUGHTON** | : |
| Yeadon Borough Police Detective Sergeant | : |
| 600 Church Lane, Yeadon, PA 19050 | : |
| **and** | : |
| **NICHOLAS TOKONITZ** | : |
| Yeadon Borough Police Detective | : |
| 600 Church Lane, Yeadon, PA 19050 | : |
| **and** | : |
| **PHILLIP STEPHENS** | : |
| Yeadon Borough Police Sergeant | : |
| 600 Church Lane, Yeadon, PA 19050 | : |
| **and** | : |

**PATRICIA SCHEERLE**                     :
Yeadon Borough Police                     :
Department Employee                       :
600 Church Lane, Yeadon, PA 19050         :
                                          :
                      **Defendants.** :

## AMENDED COMPLAINT

### INTRODUCTION

This case involved the death of 22-year old Shawn Morcho, who died by hanging shortly after being taken into Police custody by the Yeadon Borough Police Department. This case seeks answers, damages, and justice for the tragic and unnecessary death of Shawn Morcho, and the injuries and trauma inflicted on others as a result of the misconduct of Yeadon Borough and the Yeadon Borough Police Department and Police Officers.

### JURISDICTION

1.    This action is brought pursuant to 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution. Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343(3) and the aforementioned statutory and constitution provisions.

2.    Jurisdiction lies over state law claims based on the principles of supplemental jurisdiction, as codified at 28 U.S.C. § 1367.

3.    The amount in controversy exclusive of interest and costs dramatically exceeds the sum of One Hundred Thousand Dollars ($100,000.00).

### VENUE

4.    All the claims herein arose within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania, and involve Defendants who reside within the jurisdictional limits. Venue is accordingly invoked pursuant to the dictates of 28 U.S.C. § 1391(b) and (c).

## PARTIES

5.      Plaintiffs in this matter are the Estate of Shawn Morcho, by and through Yahmae Carson and Asongwed George Morcho as Co-Administrators of the Estate of Shawn Morcho.

6.      Yahmae Carson is the mother of Shawn Morcho, and currently resides at 300 North Front Street, Apt. F22, Darby, Pennsylvania 19023.

7.      Asongwed George Morcho is the father of Shawn Morcho, and currently resides at 1457 160th Avenue, NW, Andover, Minnesota 55304.

8.      Defendant, Yeadon Borough, is a municipality, organized by and through the Commonwealth of Pennsylvania, with a business address of 600 Church Lane, Yeadon, Pennsylvania 19050.

9.      Defendant, Shawn Burns, at all times relevant hereto, was an adult individual, citizen, and resident of the Commonwealth of Pennsylvania, and was the Yeadon Borough's  Acting Chief of Police employed by and acting in his capacity as the agent, servant and employee of the municipality. At all times relevant hereto, Shawn Burns, was charged with maintaining and enforcing Yeadon Borough's practices, policies, and procedures.  Shawn Burns was Acting Chief of Police from February of 2022 to the present and had (and continues to have) direct input and control of the policy making decisions and/or implementation and enforcement, or lack of implementation and enforcement of policies and procedures, pertaining to detainees in the Yeadon Borough Police Department.  Defendant, Shawn Burns, is being sued individually and in his official capacity.

10.      Defendant, Matt Barr, at all times relevant hereto, was an adult individual, citizen, and resident of the Commonwealth of Pennsylvania, and was a Yeadon Borough Police Officer, employed by and acting in his capacity as the agent, servant and employee of the municipality.  At all times relevant hereto, Matt Barr, was charged with maintaining and enforcing Yeadon Borough's practices, policies, and procedures. Defendant, Matt Barr, is being sued individually and in his official capacity.

11.     Defendant, Ferdie Ingram, at all times relevant hereto, was an adult individual, citizen, and resident of the Commonwealth of Pennsylvania, and was a Yeadon Borough Police Detective, employed by and acting in his capacity as the agent, servant and employee of the municipality. At all times relevant hereto, Ferdie Ingram, was charged with maintaining and enforcing Yeadon Borough's practices, policies, and procedures.  Defendant, Ferdie Ingram, is being sued individually and in his official capacity.

12.     Defendant, Leah Cesanek, at all times relevant hereto, was an adult individual, citizen, and resident of the Commonwealth of Pennsylvania, and was a Yeadon Borough Police Detective, employed by and acting in his capacity as the agent, servant and employee of the municipality. At all times relevant hereto, Leah Cesanek, was charged with maintaining and enforcing Yeadon Borough's practices, policies, and procedures. Defendant, Leah Cesanek, is being sued individually and in his official capacity.

13.     Defendant, Joseph Houghton, at all times relevant hereto, was an adult individual, citizen, and resident of the Commonwealth of Pennsylvania, and was a Yeadon Borough Police Detective Sergeant, employed by and acting in his capacity as the agent, servant and employee of the municipality. At all times relevant hereto, Joseph Houghton, was charged with maintaining and enforcing Yeadon Borough's practices, policies, and procedures. Defendant, Joseph Houghton, is being sued individually and in his official capacity.

14.     Defendant, Nicholas Tokonitz, at all times relevant hereto, was an adult individual, citizen, and resident of the Commonwealth of Pennsylvania, and was a Yeadon Borough Police Detective, employed by and acting in his capacity as the agent, servant and employee of the municipality. At all times relevant hereto, Nicholas Tokonitz, was charged with maintaining and enforcing Yeadon Borough's practices, policies, and procedures. Defendant, Nicholas Tokonitz, is being sued individually and in his official capacity.

-4-

15.    Defendant, Phillip Stephens, at all times relevant hereto, was an adult individual, citizen, and resident of the Commonwealth of Pennsylvania, and was a Yeadon Borough Police Sergeant, employed by and acting in his capacity as the agent, servant and employee of the municipality. At all times relevant hereto, Phillip Stephens, was charged with maintaining and enforcing Yeadon Borough's practices, policies, and procedures. Defendant, Phillip Stephens, is being sued individually and in his official capacity.

16.    Defendant, Patricia Scheerle, at all times relevant hereto, was an adult individual, citizen, and resident of the Commonwealth of Pennsylvania, and was a Yeadon Borough Police Department secretary who was present in the station at the time of Mr Morcho death and employed by and acting in her capacity as the agent, servant and employee of the municipality. At all times relevant hereto, Defendant, Patricia Scheerle, was charged with duties and responsibilities as they pertain to the intake and detention of Shawn Morcho and also charged with maintaining and enforcing Defendant, Yeadon Borough's, practices, policies, and procedures.  Defendant, Patricia Scheerle, is being sued individually and in her official capacity.

## **FACTS**

17.    On July 5, 2022, at approximately 11:48 a.m., Yahmae Carson, the mother of Shawn Morcho, placed a distress 911 call regarding her son, Shawn Morcho, requesting that Shawn Morcho be taken to rehab for substance abuse and mental health issues.

18.    The officers responded to an initial 911 call of Shawn Morcho acting irrationally and needing help.

19.    The responding officers knew that they were responding to a domestic disturbance.

20.    The responding officers were advised by Delcom that Shawn Morcho was allegedly intoxicated.

21.     The call notes from the 911 call placed by Shawn Morcho's mother indicated that "her son is on drugs", acting irrationally and she needed him removed from the apartment and sent to Recovery Centers of America.

22.     At 11:55 a.m. or 11:56 a.m., on July 5, 2022, Defendant, Matt Barr, a Yeadon Borough police officer, arrived at the residence of Ms. Carson and Shawn Morcho, at 300 North Front Street, Apt. F22, as a result of her 911 call.

23.     Two other officers from the Yeadon Borough Police Department, Defendants, Phillip Stephens and Nicholas Tokonitz, arrived at the property shortly after officer Defendant, Barr.

24.     Ms. Carson communicated with the responding Yeadon Borough police officers, Barr, Stephens, and Tokonitz (Responding Police Officers) indicating that her son, Shawn Morcho, who was 22 years old, needed help, was in distress, had been taking drugs, was acting irrationally, and inappropriately, and was suffering from a mental health crisis. She requested that Shawn Morcho be taken to the Recovery Centers of America for emotional assistance and perhaps substance abuse.

25.     One or more of the Responding Police Officers entered the apartment, and observed Shawn Morcho sitting next to a large full bag of marijuana and drinking a Corona beer.

26.     Ms. Carson pleaded with the Responding Police Officers to communicate with her when Shawn Morcho arrived at his destination.

27.     Ms. Carson further advised the Responding Police Officers that she would meet Shawn Morcho at the Recovery Centers of America.

28.     Instead of taking Shawn Morcho to the Recovery Centers of America, the Responding Police Officers claimed that an outstanding warrant existed on Shawn Morcho, and proceeded to handcuff Shawn Morcho, and take him into police custody.

29.     While still in the apartment, Shawn Morcho asked the officers "if they could leave his bag of weed at the apartment."

30.     The Responding Police Officers were familiar with Shawn Morcho having interacted with him and arrested him in the past.

-6-

31.    While in the police vehicle the irrational behavior continued.    Shawn Morcho continually asked for his "weed bag."

32.    Shawn Morcho clearly had no comprehension as to why he was being arrested.

33.    During the ride to the police station, Shawn Morcho repeatedly stated, at least three times, he was going to get out of the vehicle while the vehicle was still moving.  (Defendant, Barr, bodycam at 9:30).

34.    Shawn Morcho was repeatedly talking to himself while in the rear of the vehicle and was repeating statements.

35.    Shawn Morcho repeatedly stated to the officers that he was due at work at 2:30 p.m. that day and asked if the officer could take him to work.

36.    Shawn Morcho said to the officer "If I get fired I'm going to be way different."

37.    During transport to the police station, Shawn Morcho allegedly asked Defendant, Officer Barr, if he could have his marijuana returned to him, or if the police "could just take some and leave him the rest."

38.    By Defendant, Barr's, admission, there were only three police officers on duty in the entire Yeadon Borough Police Department at the time of Shawn Morcho's arrest and detainment.  (Defendant, Barr, bodycam at 12:50).

39.    At approximately 12:10 p.m., on July 5, 2022, Shawn Morcho entered the Yeadon Borough Police Department under the custody and control of one or more of the Responding Police Officers.

40.    At 12:11 p.m., on July 5, 2022, Shawn Morcho was placed into a holding cell, Cell #1, by one of the Responding Police Officers.

41.    The holding cell Shawn Morcho was placed in, and the adjoining cell, were each equipped with a video monitoring system, which showed any and all actions of individuals being held in custody, and which showed all actions taken by Shawn Morcho while in police custody on July 5, 2022.

42.    Unfortunately, despite the presence of numerous police officers, detectives, and other personnel at the police station, no one was monitoring the video monitoring system or Shawn Morcho at all.

43.    The irrational behavior of Shawn Morcho continued in the holding cell.

44.    At 12:13 p.m., on July 5th, Shawn Morcho is seen on video listless and pacing, and removed a camouflage shirt, before placing it back on.

45.    At 12:35 p.m., on July 5, 2022, Shawn Morcho again removed his shirt.

46.    At 12:35 p.m., on July 5, 2022, Shawn Morcho affixed his shirt around his neck, and climbed up on a bench.  These actions were being recorded on video.

47.    At 12:36 p.m., on July 5, 2022, Shawn Morcho tied part of the shirt, which was also affixed to his neck, to a bar in the ceiling of his holding cell, and hung himself, with all of the actions occurring in plain sight, and with all actions being captured on the police station's video monitoring system.

48.    None of the many officers or employees of Defendant, Yeadon Borough, or the Yeadon Borough Police Department monitored the videos, saw Shawn Morcho's cell or even checked on Shawn Morcho from the time he was placed in the cell until the time he hung himself.

49.    At 12:58 p.m., Defendant, Officer Barr, checked on Shawn Morcho in the holding cell and discovered him hanging.  Defendant, Officer Barr, opened the cell and attempted to render assistance to Shawn Morcho.

50.    At no time after he was placed in the holding cell at the Yeadon Borough Police Department at 12:11 p.m., until he was found hanging by Defendant, Officer Barr, at approximately 12:58 p.m., did any agent, employee, or workman of Defendants monitor, surveil, or otherwise check on Shawn Morcho, although Shawn Morcho had been reported to be in distress, was acting in distress, was in the midst of a mental health crisis, was making irrational statements, and was under the influence of drugs and/or alcohol, for the purpose of ensuring his safety.

51.    Paramedics arrived at approximately 1:01 p.m. on July 5, 2022, to attend to Shawn Morcho.

52.     At approximately 1:42 p.m., Shawn Morcho arrived at Mercy Fitzgerald Hospital.

53.     According to the Certificate of Death, Shawn Morcho was pronounced dead on July 5, 2022, at 1:42 p.m., by method of hanging.

54.     Shawn Morcho did not die immediately but suffered emotional and physical pain before dying.

55.     At the time of Shawn Morcho's incarceration, Defendants knew or should have known that individuals in custody, such as Shawn Morcho, who were potentially under the influence of drugs and/or intoxicated, who were under distress, and who were suffering from a mental health crisis, like Shawn Morcho, were vulnerable and at risk of self harm.

56.     At the time of Shawn Morcho's incarceration, Defendants knew or should have known that individuals in custody who were likely to attempt suicide, were most likely to attempt to hang themselves in their cell.

57.     On or about July 5, 2022, when Shawn Morcho was arrested and brought to the Yeadon Borough Police Department and placed in a holding cell, Shawn Morcho had a history of drug abuse and of being in distress, which was known, or should have been known, by Defendants.

58.     Upon information and belief, no mental health screening, risk screening, self harm screening or other screening to ensure the safety of Shawn Morcho was performed by Defendants at any time, and no precautionary actions were taken to ensure that Shawn Morcho would not harm himself.

59.     The holding cell in which Shawn Morcho was placed was not, in any way, "suicide proof."

60.     None of the Defendants took any action whatsoever to assess or document known and obvious risks of the potential for self harm.   There was no screening, no documentation and no questions asked of the detainee, Shawn Morcho, or his mother.

61.    Defendants, including Defendant, Yeadon Borough, had no administrative structure, organization, policies and procedures concerning access to mental health care, intake screening, interviewing incoming detainees, suicide prevention, and monitoring of holding cells and had inadequate staff training.

62.    The lack of these procedures and policies and/or alternatively, if the policies and procedures existed, the lack of implementation and enforcement because of custom and habit of not following and enforcing these policies and procedures was a contributing factor to the death of Shawn Morcho.

63.    Had a screening, interview or other meaningful communication occurred between Defendants and the decedent, Shawn Morcho, Defendants would have known of Shawn Morcho's need for mental health treatment or the need for other precautions to prevent self harm.

64.    Defendants failed to assess the detainee, Shawn Morcho's, vulnerability to self harm and suicide.

65.    Shawn Morcho's statements and actions prior to his death presented known substantial and obvious risk factors for his likelihood to commit suicide. Defendants, each of them, failed to assess the risk and take any action to prevent harm to Shawn Morcho.

66.    Defendants intentionally and willfully failed to do any risk assessment concerning, but not limited to, the risk that Shawn Morcho would harm himself and commit suicide.

67.    Defendants, each of them, failed to do any type of intake or assessment. This failure was intentional, deliberately indifferent and grossly negligent.

68.    Defendants had no policy and procedure for incoming detainees to screen for suicide assessment, suicide rating or mental health status.

69.    Defendants, each of them, acted with reckless indifference to Shawn Morcho's vulnerability. Such vulnerability was known or should have been known, and would have been known, had they taken any action whatsoever to do a basic screening and basic monitoring of Shawn Morcho.

70.    Defendants did not have a comprehensive suicide prevention policy or procedure or alternatively, if they did, it was never developed and certainly not implemented in Shawn Morcho's case.

80.    The overall structure and organization and lack of implementation of any policy by Defendants to assess Shawn Morcho for the risk of self harm and to care for and monitor his condition while in their exclusive custody and control was grossly reckless and deliberately indifferent to the mental health needs, health needs, and safety and well being needs of Shawn Morcho.

81.    Suicide prevention in a jail cell of a pre-trial detainee is the responsibility of administrative and custodial staff including specifically the above named Defendants.

82.    There was no comprehensive suicide prevention policy or any forms to be completed by the personnel of the Yeadon Borough Police Department in intake in regard to the health, safety and well being of detainees.

83.    Defendants failed to have adequate staff for risk assessment, intervention and monitoring.

84.    Defendant, Yeadon Borough, fired its very experienced Police Chief in February of 2022, allegedly for non meritorious and political reasons. There has been no significant effort to secure a suitable full time replacement. This intentionally created void was a contributing factor creating a calamity of errors, which created circumstances that lead to Shawn Morcho's death.

85.    Defendants failed to implement any type of suicide screening or self harm screening which would query the common risk factors of suicide at the time of Shawn Morcho being placed into the holding cell.

86.    Defendants failed to train their staff in any regard whatsoever concerning suicide prevention and procedure.

87.    Defendants failed to provide adequate resources for mental health staff to be available even remotely, and this failure directly led to the harm suffered by Shawn Morcho.

88.     The aforementioned actions and inactions by Defendants were directly related to the death of Shawn Morcho.

89.     Defendants knew or should have known of Shawn Morcho's vulnerability and failed to take reasonable steps administratively and clinically to prevent him from committing suicide.

90.     Defendants failed to perform any type of basic suicide risk assessment, mental health assessment or self harm assessment.

91.     Defendants grossly failed and were deliberately indifferent in their efforts of custodial supervision and I monitoring.

92.     Defendants did not have policies, and if they did, they did not enforce or follow their own policies for suicide assessment and prevention, all of which was deliberate indifference to the psychological, the health, safety and well being needs of Shawn Morcho.

93.     Defendants failed to communicate between the officers' observations in transporting and interacting with Shawn Morcho in the vehicle on the way to the police station, and observations while at the station, to other employees including Defendant, Patricia Scheerle, and others who had the responsibility of monitoring at least the closed circuit video of Shawn Morcho as well as personal inspection of his cell on a reasonable basis.

94.     There were no policies concerning suicide prevention, suicide screening, mental health screening and detention of detainees with mental health issues by Defendant, Yeadon Borough.  Alternatively, if there were such policies, there was a custom and practice for them to routinely not be followed, and such failure and deliberate indifference was directly related to the death of Shawn Morcho.

95.     Defendants failed to supervise Shawn Morcho or even monitor him on closed circuit TV.  If they had, they would have seen Shawn Morcho taking off his shirt, acting irrationally, pacing the cell and tying his shirt to the cell bars to use as a noose for hanging.  There was adequate time to intervene had this minimal level of care and administration been followed.

-12-

96.     Defendants that were responsible for the supervision of Shawn Morcho failed to do a basic risk of self harm assessment, failed to monitor, failed to communicate the irrational behavior witnessed by the officers to the personnel at the police station and those responsible for monitoring and the health, safety and welfare of Shawn Morcho.

97.     Defendants, each of them, failed to act within the scope of routine and current police jail practices by failing to protect and monitor Shawn Morcho.

98.     Defendants failed to prioritize the most important primary aspect of an inmate's detention which is their safety.

99.     Defendants failed to do any type of basic classification of Shawn Morcho upon his entering the police station, and placing him into the holding cell.

100.    Defendants were aware of the seriousness of the situation Shawn Morcho was in including the fact that he was being arrested for a failure to appear warrant, was most likely to be charged with attempt to deliver marijuana, his prior police involvement, the allegations of intoxication and substance abuse and his young age of 22.

101.    Defendant officers failed to obtain any information from the complaining witness, Shawn Morcho's mother, about his mental health issues, his substance abuse issues and his propensity for self harm.

102.    Defendants failed to complete any type of documentation including a lock up record form at any time between Shawn Morcho being taken into the police station and the time of hanging.

103.    Defendants who placed Shawn Morcho in his cell failed to notify the communications operator to begin audio and video monitoring of Shawn Morcho in his cell as well as failed to do visual checks of him or request other to do visual checks of him.

104.    Defendants failed to have Shawn Morcho, who was suspected of being intoxicated, examined by a paramedic.

105.    Defendants failed to have Shawn Morcho remotely evaluated by a mental health professional and/or failed to transfer him to a medical or psychiatric facility.

106.    Defendants failed to have constant closed circuit TV supervision of Shawn Morcho when they knew that they did not complete any type of risk assessment prior to placing him in the holding cell.

107.    Defendants failed to assign turnkey personnel to monitor the closed circuit video.

108.    Defendants failed to keep a log of visual and personal checks and observations of Shawn Morcho.

109.    Defendant, Yeadon Borough, supported a violation of Shawn Morcho's constitutional rights or executed policy, regulation and officially adopted decisions or informally adopted customs which affected transgressions upon the constitutional rights of Shawn Morcho.   Defendant, Yeadon Borough, adopted, by custom, to allow the police department not to follow its own policy concerning detainees in the holding cell located in the Yeadon Borough Police Department.

110.    The arresting officers and other agents, employees, and/or workmen of Defendant, Yeadon Borough, were or should have been trained to recognize signs and information that may indicate that an incarcerated individual, such as Shawn Morcho, was at an increased risk of committing suicide, and taken precautionary measures or recommended that they be taken.

111.    Training for all staff of Defendants failed to include training to identify suicide risk factors, recognition of suicidal behavior and appropriate methods for responding to potentially suicidal individuals in custody.

112.    Defendants either negligently, recklessly or intentionally refused to monitor and care for Shawn Morcho or were unequipped to monitor and care for Shawn Morcho.

113.    Defendants failed to accommodate Shawn Morcho, in his condition and crisis, by failing to monitor his condition, and failed to modify the structure of his holding cell, or place Shawn Morcho in a safe cell, in order to eliminate suicide hazards, and protect people like Shawn Morcho from the risk of suicide, and failed to promulgate appropriate policies, procedures, training, supervision, and accountability of their officers, agents, and employees, in order to ensure the reasonable accommodations

were provided to people who, like Shawn Morcho, were in the midst of a mental health crisis.

114.    At all times material hereto, Shawn Morcho was easily visible and viewable by Defendants, their agents, employees, and workmen, either in person, or by and through multiple surveillance cameras.

115.    At all times material hereto, Defendants had a duty to act to prevent self harm of individuals within their custody, including suicides, by and through measures including appropriate sensitivity, communication, surveillance, supervision, and referrals.

116.    Shawn Morcho's death was preventable, had Defendants exercised any caution or care for Shawn Morcho, while he was under their care, custody, and control.

117.    The injuries and damages suffered by Shawn Morcho and Plaintiffs were directly and proximately caused by the acts and/or omissions of Defendants, jointly and severally, individually, or by and through their agents, servants, and/or employees.

118.    The acts and/or omissions of all Defendants, jointly and severally, directly and proximately caused and/or increased the risk of harm and death suffered by Shawn Morcho.

119.    As a direct and proximate result of the negligence of all Defendants, jointly and severally, as well as the negligence of their agents, servants, and/or employees, Shawn Morcho was caused to experience damages which included the following:

      (a)    Pain and suffering;

      (b)    Fear and fright;

      (c)    Humiliation and embarrassment;

      (d)    Economic loss;

      (e)    Wage loss and loss of future earning capacity;

      (f)    Medical bills and funeral expenses;

      (g)    Death;

(h)    Damages as recoverable under the Pennsylvania Wrongful Death Act;

(i)    Damages as recoverable under the Pennsylvania Survival Act.

## COUNT I
## CIVIL RIGHTS - 42 U.S.C. §1983
## STATE CREATED DANGER AND DELIBERATE INDIFFERENCE CLAIMS
### Plaintiffs v. All Defendants

120.    Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein at length.

121.    The conduct of Defendants, each of them, as set forth above, acting under color of state law, harmed Plaintiff, and was recklessly and deliberately indifferent to the safety, health, medical, bodily integrity, psychiatric, and well-being needs of Shawn Morcho and was committed in conscious disregard of the substantial and/or unjustifiable risk of causing harm to Shawn Morcho and was so egregious as to shock the conscience.

122.    The conduct of Defendants as set forth above violated Shawn Morcho's constitutional rights while in pre-trial custody, particularly to rights to be free from cruel and unusual punishment, rights to be free from state created danger, and to substantive and procedural due process, as guaranteed to pre-trial detainees by the Fourteenth Amendment to the United States Constitution, and as remediable pursuant to 42 U.S.C. §1983.

123.    The conduct of Defendants acting under cover of law, created a dangerous situation by willfully disregarding the safety of Shawn Morcho thereby causing foreseeable and direct harm to him.

124.    The affirmative conduct of Defendants which created the dangerous situation that caused harm to Shawn Morcho consisted of, but was not limited to, the following:

(a)    Affirmatively ordering Shawn Morcho into a holding cell at the Yeadon Borough Police Department when they knew he was not going to be monitored;

-16-

(b)    Affirmatively walking away from the cell when they knew Shawn Morcho would not be monitored;

(c)    Affirmatively choosing not to perform any type of pre-detainee screening including mental health screening, risk assessment, health screening, suicidal tendency screen and all other pre-detainee screenings which are required by state law and/or required by policy of Defendant, Yeadon Borough;

(d)    Affirmatively choosing not to *assign* personnel to monitor Shawn Morcho either by reasonable cell checks or under reasonable monitoring by closed circuit video;

(e)    Affirmatively choosing not to monitoring Shawn Morcho by reasonable cell checks or by closed circuit video;

(f)    Affirmatively choosing to have officers leave the station or otherwise purposely having the station understaffed;

(g)    Affirmatively and intentionally choosing to not perform any screening; and

(h)    Affirmatively and intentionally choosing to disregard signs of distress in and potential for self harm by Shawn Morcho.

125.    Defendants' affirmative actions as described above was an exercise and misuse of Defendants' authority in a way that created danger to Shawn Morcho and rendered him more vulnerable to danger; which danger in fact occurred resulting in his death.

126.    The conduct of Defendants as set forth above violated Shawn Morcho's constitutional rights while he was in custody as specified:

(a)    His right to be free from deliberate indifference to substantial risk of harm;

(b)    His rights pursuant to the due process clause of the Fourteenth Amendment of the United States Constitution;

(c)    His right to be free from deliberate indifference to Shawn Morcho's serious: safety needs, health needs, medical needs, bodily integrity and well beings needs and mental health needs;

(d)    His rights to substantive and procedural due process as guaranteed by the Fourteenth Amendment of the United States Constitution;

(e)    His right to be free from state created danger pursuant to the due process clause of the Fourteenth Amendment of the United States Constitution.

These rights are guaranteed by the United States Constitution, the Eighth and Fourteenth Amendments, as remediable pursuant to 42 U.S.C. §1983.

127.    A special relationship existed between Shawn Morcho and Defendants as detainee and jailer.

128.    As a result of the actions of Defendants as specified in all the proceeding paragraphs Defendants rendered Shawn Morcho more vulnerable to harm including death.

129.    As a direct and proximate result of the acts and omissions of all individual Defendants, in their official capacities, they are liable for the harm sustained by Shawn Morcho as they failed to adequately train, supervise and discipline all agents, servants, workman, independent contractors and/or employees in a manner that would have prevented Shawn Morcho from being subjected to danger under circumstances presented above and herein.

130.    Defendants, each of them, whose actions, conduct and failure to act, placed Plaintiff in grave harm, are liable in their individual capacities for the injuries sustained by Shawn Morcho.

131.    Plaintiffs, as Administrators of the Estate of Shawn Morcho, requests damages on behalf of Shawn Morcho's heirs under the Pennsylvania Wrongful Death Act, 42 Pa.C.S. §8301.

132.    Plaintiffs also bring this action on behalf of the Estate of Shawn Morcho under the Pennsylvania Survival Act, 42 Pa.C.S. §8302 under which all claims Shawn Morcho would have been able to bring had he survived.

133.    As a direct and proximate result of the violations of Shawn Morcho's civil rights, he was caused to suffer grievous physical injuries and death as set forth above and herein.

WHEREFORE, Plaintiffs demand judgment in their favor and against all Defendants, individually and/or jointly and severely, in excess of $150,000.00 exclusive of interest and costs, which sum includes, but is not limited to:

(a)    A compensatory damage award;

(b)    Reasonable attorney's fees and costs;

(c)    Reasonable past medical and funeral expenses;

(d)    Past and future lost wages;

(e)    Damages for pain and suffering;

(f)    Punitive damages against the individual Defendants;

(g)    All other damages recoverable under 42 U.S.C. §1983;

(h)    Damages pursuant to Pennsylvania Wrongful Death Act, 42 Pa.C.S. §8301; and

(i)    Damages pursuant to the Pennsylvania Survival Act, 42 Pa.C.S. §8302.

(j)    Such other and further relief as appears reasonable and just;

## COUNT II
## CIVIL RIGHTS - 42 U.S.C. §1983
## MONELL CLAIM
## Plaintiffs v. Defendant, Yeadon Borough

134.    Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein at length.

135.    Defendant, Yeadon Borough, was responsible for the safe detention of pre-trial detainees at the Yeadon Borough Police Department including, but not limited to Shawn Morcho, and Defendant, Yeadon Borough, failed to provide policies, procedures, protocols and/or other employee training to ensure the safety of pre-trial detainees in the police jail, and in particular, policies, procedures, protocols and/or other

-19-

employee training concerning how detainees should be assessed for risk of self harm and how detainees should be monitored to prevent self harm; said policies, procedures, protocols and/or other employee training are necessary for assessing and preventing the risk of serious injury including death to detainees such as Shawn Morcho while in the exclusive custody and control of Defendants.

136.    Defendant, Yeadon Borough, failed to provide policies, procedures, protocols and/or other employee training to assess the safety needs of detainees such as Shawn Morcho when under the sole custody and control of Defendants and monitoring procedures when detaining a pre-trial arrestees in the Yeadon Borough jail cell.

137.    Defendant, Yeadon Borough's, failure to enact the previously described policies, procedures, protocols and/or other employee training constitute denial of Shawn Morcho's constitutionally protected civil rights, and   demonstrate deliberate indifference to Shawn Morcho's safety needs, mental health needs, and well being needs, while in the exclusive control of Defendants and such actions resulted to the death of Shawn Morcho.

138.    The conduct of Defendant, Yeadon Borough, as set forth above, acting under color of state law, was intended to harm Shawn Morcho and was negligent, reckless, and deliberately indifferent to the safety needs, health needs, mental health needs, well-being needs, medical needs, and bodily integrity needs, of Shawn Morcho and was committed in conscious disregard of the substantial risk and/or unjustifiable risk of causing harm including death to Shawn Morcho, and was conduct which arises to willful misconduct and/or gross negligence, and was so egregious as to shock the conscience.

139.    The conduct of Defendant, Yeadon Borough, as set forth above violated Shawn Morcho's constitutional rights while in exclusive custody as specified:

(a)    His right to be free from deliberate indifference to substantial risk of harm;

(b)    His rights pursuant to the due process clause of the Fourteenth Amendment of the United States Constitution;

(c)    His right to be free from deliberate indifference to Shawn Morcho's serious safety needs, health needs, medical needs, bodily integrity needs and mental health needs;

(d)    His rights to substantive and procedural due process as guaranteed by the Fourteenth Amendment of the United States Constitution; and

(e)    His right to be free from state created danger pursuant to the due process clause of the Fourteenth Amendment of the United States Constitution.

These rights are guaranteed by the United States Constitution, the Eighth and Fourteenth Amendments, and as remediable pursuant to 42 U.S.C. § 1983.

140.    As a direct and proximate result of the acts and omissions of Defendant, Yeadon Borough, all Defendants are liable for the harm and death caused to Shawn Morcho, as it failed to adequately train, supervise and discipline all agents, servants, workmen, independent contractors, and/or parties employed pursuant to contractual duties, and/or employees, and failed to provide policies for the safety of detainees in their control, in a manner which would have prevented Shawn Morcho from being subjected to harm from deliberate indifference to his serious safety needs, health needs, mental health needs, well-being needs, medical needs, and bodily integrity needs, and  violations of his due process rights and state created danger under circumstances presented above and herein.

141.    As it applies to Defendant, Yeadon Borough:

(a)    It had actual or constructive knowledge that it and/or its subordinates were engaged in conduct which posed a pervasive and unreasonable risk of constitutional injury to Shawn Morcho under the circumstances previously described herein;

(b)    Its response to that knowledge was so inadequate as to demonstrate deliberate indifference to or tacit authorization of the alleged dangerous and offensive practices pertaining to the detention of pre-trial detainees under the circumstances previously described herein; and

(c)    The policy and custom of not abiding by or enforcing policies, if any, concerning the handling, monitoring, safety, assessment and

well being of detainees demonstrated deliberate indifference to and/or tacit authorization of the dangerous and offensive practices pertaining to the detention of pre-trial detainees including Shawn Morcho.

These actions and/or inactions had a direct causal link to the constitutional injury, harm and death suffered by Shawn Morcho.

142.    Defendant, Yeadon Borough, developed and maintained a number of deficient policies and/or customs which caused the deprivation of Shawn Morcho's constitutional rights as aforesaid.  Said policies or customs were a direct and proximate cause of the constitutional harm, injuries and death suffered by Shawn Morcho as aforesaid.

143.    As a direct and proximate result of the violation of Shawn Morcho's civil and constitutional rights, he was caused to suffer grievous physical injuries including death as set forth above and herein.

WHEREFORE, Plaintiffs demand judgment in their favor and against all Defendants, individually and/or jointly and severely, in excess of $150,000.00 exclusive of interest and costs, which sum includes, but is not limited to:

      (a)    A compensatory damage award;

      (b)    Reasonable attorney's fees and costs;

      (c)    Reasonable past medical and funeral expenses;

      (d)    Past and future lost wages;

      (e)    Damages for pain and suffering;

      (f)    Punitive damages against the individual Defendants;

      (g)    All other damages recoverable under 42 U.S.C. §1983;

      (h)    Damages pursuant to Pennsylvania Wrongful Death Act, 42 Pa.C.S. §8301; and

      (i)    Damages pursuant to the Pennsylvania Survival Act, 42 Pa.C.S. §8302.

(j) Such other and further relief as appears reasonable and just;

## COUNT III
## STATE LAW CLAIMS - INTENTIONAL CONDUCT
### Plaintiff v. All Defendants

144. Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein at length.

145. The acts of the individual Defendants constituted actual malice and/or willfulness misconduct.

146. Defendants, by and through their agents, servants, workmen, and/or employees, did intentionally do the following:

(a) failed to do any type of pre-detainee screening including risk assessment, assessment for self harm, mental health screening, or communicate with Shawn Morcho's mother concerning his mental health status and vulnerability prior to placing him in the holding cell at the police station;

(b) failed to monitor in person Shawn Morcho from the time he was detained until the time he was found hanging;

(c) failed to assign personnel at the Yeadon Borough Police Department to monitor Shawn Morcho's cell by way of closed circuit video from the time he was detained until the time he was found hanging;

(d) failed to monitor Shawn Morcho's cell by closed circuit video from the time he was detained until the time he was found hanging;

(e) violated standard safety practices for detainees while at the police station;

(f) violated rules, ordinances, and guidelines concerning safety practices and practices for insuring the health and well-being of detainees while in the sole custody of the Yeadon Borough Police Department;

(g)   ordered Shawn Morcho into the holding cell at the police station either knowing he was a risk for self harm or failing to inquire or do any other form of risk assessment for self harm prior to placing him in the cell;

(h)   inflict emotional distress upon Shawn Morcho as defined by Pennsylvania law.

147.   By reason of the aforesaid, Shawn Morcho sustained injuries including death.  Prior to the death of Shawn Morcho he sustained severe pain and suffering and emotional distress.

148.   As a result of the death of Shawn Morcho, the Estate of Shawn Morcho was required to spend various sums of money for hospital and funeral expenses.

149.   The actions, conduct, inactions, omissions and failure to act, by Defendants, each of them, exceeded the normal standards of reasonable care and were willful, malicious, oppressive, outrageous and unjustifiable, and therefore, punitive damages are necessary and appropriate against the individual Defendants.

150.   This Court has supplemental jurisdiction to hear and adjudicate these claims.

WHEREFORE, Plaintiffs demand judgment in their favor and against all Defendants, individually and/or jointly and severely, in excess of $150,000.00 exclusive of interest and costs, which sum includes, but is not limited to:

(a)   A compensatory damage award;

(b)   Reasonable attorney's fees and costs;

(c)   Reasonable past medical and funeral expenses;

(d)   Past and future lost wages;

(e)   Damages for pain and suffering;

(f)   Punitive damages against the individual Defendants;

(g)   All other damages recoverable under 42 U.S.C. §1983;

-24-

(h)    Damages pursuant to Pennsylvania Wrongful Death Act, 42 Pa.C.S. §8301; and

(i)    Damages pursuant to the Pennsylvania Survival Act, 42 Pa.C.S. §8302.

(j)    Such other and further relief as appears reasonable and just;

## COUNT IV
## 42 U.S.C. §1983 – INADEQUATE SUPERVISION
### (Plaintiffs v. All Defendants)

151.    Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein at length.

152.    At all times relevant to this action, Defendants were required to supervise and ensure the safety of individuals in their custody such as Shawn Morcho.

153.    Defendants failed to adequately supervise Shawn Morcho.

154.    The failure on behalf of these Defendants to adequately supervise Shawn Morcho amounted to deliberate indifference to the fact that inaction would obviously result in the violation of Shawn Morcho's civil rights described herein.

155.    The failure on behalf of these Defendants to adequately supervise Shawn Morcho proximately caused the civil rights violations described herein.

156.    As a direct and proximate result of the aforementioned violations of Shawn Morcho's civil and constitutional rights, Plaintiffs have sustained the injuries, damages, and ultimately death as described herein.

WHEREFORE, Plaintiffs demand judgment in their favor and against all Defendants, individually and/or jointly and severely, in excess of $150,000.00 exclusive of interest and costs, which sum includes, but is not limited to:

(a)    A compensatory damage award;

(b)    Reasonable attorney's fees and costs;

(c)    Reasonable past medical and funeral expenses;

(d)     Past and future lost wages;

(e)     Damages for pain and suffering;

(f)     Punitive damages against the individual Defendants;

(g)     All other damages recoverable under 42 U.S.C. §1983;

(h)     Damages pursuant to Pennsylvania Wrongful Death Act, 42 Pa.C.S. §8301; and

(i)     Damages pursuant to the Pennsylvania Survival Act, 42 Pa.C.S. §8302.

(j)     Such other and further relief as appears reasonable and just;

## COUNT V
## PENNSYLVANIA WRONGFUL DEATH AND SURVIVOR ACT
### (Estate of Shawn Morcho v. All Defendants)

157.   Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein at length.

158.   As a direct result of the Defendants' actions, Shawn Morcho suffered the injuries, damages, and untimely death described herein.

159.   The Estate of Shawn Morcho seeks damages under 42 Pa.C.S. § 8301 et seq. for wrongful death and 42 Pa.C.S. § 8301 et seq. for survivor damages, including, but not limited to, the loss of his services, protections, care, future income, assistance, society, companionship, comfort, guidance, counsel and advice, as well as for their severe emotional distress and mental health anguish caused by this loss, as well as for funeral expenses and damages.

WHEREFORE, Plaintiffs demand judgment in their favor and against all Defendants, individually and/or jointly and severely, in excess of $150,000.00 exclusive of interest and costs, which sum includes, but is not limited to:

(a)     A compensatory damage award;

(b)     Reasonable attorney's fees and costs;

(c)     Reasonable past medical and funeral expenses;

(d)     Past and future lost wages;

(e)     Damages for pain and suffering;

(f)     Punitive damages against the individual Defendants;

(g)     All other damages recoverable under 42 U.S.C. §1983;

(h)     Damages pursuant to Pennsylvania Wrongful Death Act, 42 Pa.C.S. §8301; and

(i)     Damages pursuant to the Pennsylvania Survival Act, 42 Pa.C.S. §8302.

(j)     Such other and further relief as appears reasonable and just;

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment in their favor and against all Defendants, individually and/or jointly and severely, in excess of $150,000.00 exclusive of interest and costs, which sum includes, but is not limited to:

(a)     A compensatory damage award;

(b)     Reasonable attorney's fees and costs;

(c)     Reasonable past medical and funeral expenses;

(d)     Past and future lost wages;

(e)     Damages for past pain and suffering;

(f)     Such other and further relief as appears reasonable and just;

(g)     Punitive damages against the individual defendants;

(h)     All other damages recoverable under 42 U.S.C. §1983;

(i)     Damages pursuant to Pennsylvania Wrongful Death Act, 42 Pa.C.S. §8301; and

(j)     Damages pursuant to the Pennsylvania Survival Act, 42 Pa.C.S. §8302.

## JURY DEMAND

Plaintiffs demand a trial by jury on all claims and issues so triable.

Respectfully submitted,

Date:  11/21/22

/s/ *D. Scott Bonebrake*

D. SCOTT BONEBRAKE, Esquire
Attorney ID Number: 76341
Noel and Bonebrake
25 East Second Street
Media, PA 19063
Phone: 610-892-7700
Fax: 610-892-7712
Email: sbonebrake@noelandbonebrake.com
*Co-Counsel for Plaintiffs*

Date:  11/21/22

/s/ *James D. Famiglio*

JAMES D. FAMIGLIO, Esquire
Attorney ID Number: 51101
Law Offices James D. Famiglio, P.C.
811 N. Providence Road
Media, PA 19063
Phone: 610-359-9220
Fax: 610-356-4971
Email: jfamiglio@famigliolaw.com
*Co-Counsel for Plaintiffs*

-28-

**NOEL AND BONEBRAKE**
By:  D. Scott Bonebrake, Esquire
Identification No. 76341
25 East Second Street
Media, Pennsylvania 19063
Telephone: (610) 892-7700
Attorney for Plaintiff

**LAW OFFICES OF JAMES D. FAMIGLIO**
By: James D. Famiglio, Esquire
Identification No. 51101
811 North Providence Road
Media, Pennsylvania 19063
Telephone: (610) 359-9220
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ESTATE OF SHAWN MORCHO, | : | CIVIL ACTION |
| BY AND THROUGH YAHMAE CARSON | : | |
| AND ASONGWED GEORGE MORCHO, | : | NO. 2:22-CV-03245-NIQA |
| AS ADMINISTRATORS OF THE ESTATE | : | |
| OF SHAWN MORCHO, | : | JURY TRIAL DEMANDED |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| YEADON BOROUGH, YEADON BOROUGH | : | |
| POLICE DEPARTMENT, SHAWN BURNS, | : | |
| and JOHN DOE(s) | : | |
| Defendants. | : | |

## CERTIFICATE OF SERVICE

I, D. Scott Bonebrake, Esquire, counsel for Plaintiffs, state that a true and correct copy of

the Amended Complaint was served upon the following individual via ECF filing system, this 21st

day of November 2022:

Robert P. DiDomenicis, Esquire
Holsten Associates, PC
115 North Jackson Street
Media, Pennsylvania 19063

D. SCOTT BONEBRAKE, Esquire
Attorney for Plaintiffs