# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ESTATE OF SHAWN MORCHO, BY AND THROUGH YAHMAE CARSON AND ASONGWED GEORGE MORCHO, AS ADMINISTRATORS OF THE ESTATE OF SHAWN MORCHO** | : : : : : | **CIVIL ACTION** **NO. 22-3245** |
| *Plaintiff* | : : | |
| **v.** | : : | |
| **YEADON BOROUGH,** *et al.* *Defendants* | : : : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                                    January 2, 2024

## MEMORANDUM OPINION

**INTRODUCTION**

This civil action arises out of the tragic suicide of Shawn Morcho ("Shawn"), who took his own life while a pretrial detainee at the Yeadon Borough jail. Plaintiffs Yahmae Carson and Asongwed George Morcho, Shawn's parents and co-administrators of Shawn's Estate ("Plaintiffs"), filed this action against the Yeadon Borough and several officers/employees of the Yeadon Borough Police Department (collectively, "Defendants"),[1] under 42 U.S.C. § 1983 for the violation of Shawn's substantive due process rights.

Before this Court is Defendants' motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), in which Defendants seek dismissal of the bulk of Plaintiffs' claims on the basis that Plaintiffs have not alleged facts sufficient to meet their pleading burden as to each defendant on each claim. Plaintiffs oppose the motion. The issues raised in the motion have been

---

[1] Defendants included the following: Yeadon Borough, Yeadon Borough Police Department, Chief of Police Shawn Burns, Matt Barr, Fergie Ingram, Leah Cesanek, Joseph Houghton, Nichols Tokonitz, Phillip Stephens, and Patricia Scheerle.

fully briefed and are ripe for disposition.  For the reasons set forth, Defendants' motion to dismiss is granted, *in part*, and denied, *in part*.

**BACKGROUND**

When ruling on a motion to dismiss, this Court must accept as true all factual allegations in a plaintiff's operative complaint and construe the facts alleged in the light most favorable to the plaintiff.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).  The facts relevant to the underlying motion and alleged in the third amended complaint are as follows:

> On July 5, 2020, at approximately 11:48 a.m., Shawn's mother, Yahmae Carson ("Carson"), placed a 911 call requesting that Shawn be taken to a rehabilitation facility for substance abuse and mental health issues.  Defendants Matt Barr, Nicholas Tokonitz, and Phillip Stephens (collectively, the "Responding Officers") responded to the call knowing that they were responding to a domestic disturbance and that Shawn was allegedly intoxicated.  Notes from the 911 call indicate that Shawn was on drugs, acting irrationally, and needed to be removed from the apartment and taken to the Recovery Centers of America, a rehabilitation facility.  At approximately 11:55 a.m., Defendant Barr arrived at Carson and Shawn's shared residence.  Shortly thereafter, Defendants Stephens and Tokonitz arrived at the residence.
>
> Upon the Responding Officers' arrival at the residence, Carson told the Responding Officers that Shawn needed help, was in distress, had been taking drugs, was acting irrationally and inappropriately, and was suffering from a mental health crisis.  Carson requested that the Responding Officers take Shawn to the Recovery Centers of America for emotional assistance and perhaps substance abuse treatment.  One or more of the Responding Officers then entered the apartment and observed Shawn sitting next to a large, full bag of marijuana and drinking a beer.  Carson pleaded with the Responding Officers to assist Shawn and to communicate with her when Shawn arrived at Recovery Centers of America.  She also advised that she would meet Shawn at the rehabilitation center.
>
> The Responding Officers told Carson that there was an outstanding warrant for Shawn's arrest.  Pursuant to the warrant, the

Responding Officers arrested and handcuffed Shawn and took him into police custody. Shawn asked the Responding Officers "if they could leave his bag of weed at the apartment." The Responding Officers transported Shawn to the police station. While traveling to the police station, Shawn exhibited irrational behavior, continually asked for his "weed bag," stated that he was going to exit the moving vehicle, talked to himself, asked the officers to take him to work, and stated that "if I get fired, I'm going to be way different." Shawn also asked Defendant Barr if he could have his marijuana returned to him or if the police "could just take some and leave him the rest."

At 12:10 p.m., Shawn entered the Yeadon Borough Police Department under the custody and control of at least one of the Responding Officers. One of the Responding Officers placed Shawn into Cell #1, a holding cell equipped with a video monitoring system that showed the individuals held in the cell. Despite the presence of numerous police officers, detectives, and other personnel at the police station, no one was monitoring the video system or Shawn in his cell. Nonetheless, the video monitoring system captured Shawn's behavior inside the cell between 12:13 p.m. and 12:58 p.m.

As captured by the video monitoring system, at 12:13 p.m., Shawn was pacing and acting listless in his cell, and took off his shirt and then put it back on. At 12:35 p.m., Shawn again removed his shirt, placed it around his neck, climbed onto a bench, tied the shirt to a bar in the ceiling, and hung himself. All these actions were captured on the video monitoring system. At 12:58 p.m., Defendant Barr checked on Shawn and discovered him hanging. Defendant Barr attempted to render assistance. Paramedics arrived three minutes later at 1:01 p.m. At 1:42 p.m., Shawn was pronounced dead at Mercy Fitzgerald Hospital.

Plaintiffs allege that no one performed a mental health screening, risk screening, self-harm screening, or other type of safety screening on Shawn at any time during his detention at the Yeadon Borough Police Department jail. Further, no one took any action to reduce the risk of Shawn harming himself while in detention, despite the Responding Officers' knowledge of Shawn's mental state at the time of his arrest.

**LEGAL STANDARD**

Federal Rule of Civil Procedure ("Rule") 12(b)(6) governs motions to dismiss for failure to state a claim. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the court

"must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler*, 578 F.3d at 210–11. The court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). The complaint must do more than merely allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Id.* (internal quotation marks and citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)) (alterations in original). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege facts sufficient to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

**DISCUSSION**

Plaintiffs assert six separate federal and state law claims against the Individual Defendants and Yeadon Borough premised on each Defendants' alleged responsibility for Shawn's suicide death while a pretrial detainee at the Yeadon Borough prison. Defendants move to dismiss all but Plaintiffs' Fourteenth Amendment claim against Defendant Barr at Count I and the *Monell* claim asserted against Yeadon Borough at Count II. Defendants' arguments are addressed in turn.

*Count I: Civil Rights Claims*
*Against All Individual Defendants*

At Count I of the third amended complaint Plaintiffs assert claims against the Individual Defendants pursuant to 42 U.S.C. § 1983 for the violation of Shawn's Fourteenth Amendment due process rights.[2]  Plaintiffs assert these claims under both the state-created danger theory and the deliberate indifference theory.  Defendants contend that all claims should be dismissed against all the Individual Defendants except for the claim against Defendant Barr.

Section 1983 enables plaintiffs to bring civil actions against any person who, acting under the color of state law, deprives another of rights, privileges, or immunities secured by the Constitution and/or laws of the United States.  42 U.S.C. § 1983.  The statute does not specifically confer rights on individuals; rather, it serves as a vehicle "for vindicating federal rights elsewhere conferred."  *Graham v. Connor*, 490 U.S. 386, 393–94 (1989).  Here, to establish a claim under § 1983, Plaintiffs must allege facts sufficient to plausibly show that the Individual Defendants, acting under the color of state law, deprived Shawn of his rights secured by the Constitution or other federal law.  *Robb v. City of Phila.*, 733 F.2d 286, 290-91 (3d Cir. 1984).

Plaintiffs assert that the Individual Defendants violated Shawn's Fourteenth Amendment due process rights when they took and/or failed to take various actions that ultimately resulted in Shawn taking his own life while in pretrial custody.  The Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property without due process of law."  U.S. Const. amend. XIV, § 1.  However, the Constitution "cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other

---

[2]  In response to Defendants' motion, Plaintiffs concede that their § 1983 claims are only properly asserted for violations of Shawn's Fourteenth Amendment rights rather than his Eighth Amendment rights, since he was a pretrial detainee. (*See* Pls.' Opp., ECF 43, at p. 5). This Court agrees and will treat Plaintiffs' claims as if asserted as such.

means," such as, by the acts of other private individuals. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). This is true even if governmental interference "may be necessary to secure [those] interests." *Id.* at 196. "If the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them." *Id.* at 196-97. Generally, courts have recognized that the due process clause's purpose is to "protect people from the State, not to ensure that the State protected them from each other." *Id.* at 196; *see also Morrow v. Balaski*, 719 F.3d 160, 166 (3d Cir. 2013).

Interpreting *DeShaney*, the United States Court of Appeals for the Third Circuit (the "Third Circuit") found that it "stands for the harsh proposition that even though state officials know that a person is in imminent danger of harm from a third party, the fourteenth amendment imposes upon those state officials no obligation to prevent that harm." *Horton v. Flenory*, 889 F.2d 454, 457 (3d Cir. 1989). Notwithstanding, the Third Circuit has held that a state may be liable for its failure to protect citizens against private violence when the state (1) enters into a "special relationship" with the individual plaintiff or (2) creates a danger which results in foreseeable injury to a discrete plaintiff (the state-created danger exception). *See Ye v. United States*, 484 F.3d 634, 637 (3d Cir. 2007); *Kneipp v. Tedder*, 95 F.3d 1199, 1205 (3d Cir. 1996). As such, the harsh holding of *DeShaney* and its progeny "is limited . . . to situations in which the state is not involved in the harm, either as a custodian or as an actor." *Horton*, 889 F.2d at 457.

Ordinarily, the so-called "state-created danger" theory of liability is invoked and applied in situations where the plaintiff (or other harmed individual) was not in the custody of or in a special relationship with the state actors. Here, it is undisputed that Plaintiffs have alleged facts to substantiate that Shawn was in the physical custody of the state at the time of his death.

Notwithstanding, Defendants have pointed to no authority, and this Court is unaware of any such authority, that precludes a plaintiff from pursuing a § 1983 claim under the state-created danger theory for harm suffered while in the physical custody of the state.[3] Accordingly, this Court will address Plaintiffs' § 1983 claims against the Individual Defendants under both the state-created danger theory and the deliberate indifference theory.

### *State-Created Danger Theory*

To state a claim under the state-created danger theory, Plaintiffs must plead facts sufficient to plausibly show:

> (1) the harm ultimately caused was foreseeable and fairly direct;
>
> (2) a state actor acted with a degree of culpability that shocks the conscience;
>
> (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
>
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006) (internal citations and footnotes omitted). Here, the Individual Defendants argue that Plaintiffs' § 1983 claims against them fail

---

[3] The Individual Defendants argue that the state-created danger theory is not applicable in a case such as this where the harm was ultimately the result of a suicide. Courts in this circuit, however, have considered § 1983 claims asserted under the state-created danger theory in cases where the harm was the result of a suicide. *See, e.g.*, *Haberle v. Troxell*, 885 F.3d 171, 176–78 (3d Cir. 2018) (considering § 1983 claim under state-created danger theory where harm caused by suicide); *Sanford v. Stiles*, 456 F.3d 298, 303-04 (3d Cir. 2006) (same); *McDonald-Witherspoon v. City of Phila.*, 2017 WL 3675408, at *6 (E.D. Pa. Aug. 25, 2017) (considering a § 1983 claim under both the state-created danger theory and deliberate indifference theory where prisoner committed suicide); *Dimitris v. Lancaster Cnty. Prison Bd.*, 2002 WL 32348283, at *9 (E.D. Pa. June 7, 2002) (same). Notably, despite arguing that Plaintiffs cannot assert their § 1983 claims under a state-created danger theory, Defendants spend the majority of their brief arguing that Plaintiffs have not met their burden under the state-created danger theory.

under the state-created danger theory because Plaintiffs have not alleged the requisite affirmative action required to satisfy the fourth element. This Court agrees.

The fourth element of the state-created danger exception requires a plaintiff to allege facts to establish that state actors "used their authority to create an opportunity that otherwise would not have existed." *Kneipp*, 95 F.3d at 1208. To meet this requirement, Plaintiffs must allege facts showing that each of the Individual Defendants: (1) exercised his/her authority; (2) took an affirmative action; and (3) said affirmative action created a danger to Shawn or rendered him more vulnerable to danger than had the Individual Defendants not acted at all. *Ye*, 484 F.3d at 639. "[I]t is [the] misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." *Bright*, 443 F.3d at 282. In other words, "[l]iability under the state-created danger theory is predicated upon the states' affirmative acts which work to the plaintiffs' detriments in terms of exposure to danger." *D.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1374 (3d Cir. 1992). To satisfy this fourth element, Plaintiffs must also allege facts to establish "a direct causal relationship between the affirmative act of [each Individual Defendant] and [Shawn's] harm." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 432 (3d Cir. 2006) (explaining that "the fourth element is satisfied where the state's action was the 'but for cause' of the danger faced by the plaintiff").

In *Morrow v. Balaski*, the Third Circuit provided further guidance for distinguishing "affirmative acts" from non-actionable "omissions" in the state-created danger context. 719 F.3d 160 (3d Cir. 2013). There, the plaintiffs alleged that school authorities permitted a criminally adjudicated delinquent to return to school after serving a suspension for assaulting two fellow students. *Id.* at 164. Upon her return, school authorities allowed the delinquent student to board a bus on which one of the two students she had previously assaulted was riding. *Id.* The plaintiffs

argued that the school created a danger by affirmatively permitting the delinquent student to return to school rather than expelling her. *Id.* at 179. Rejecting the plaintiffs' argument, the Third Circuit held that plaintiffs could not satisfy the fourth prong of the state-created danger exception by simply recasting the omissions upon which the claims were based as affirmative acts. "[M]erely restating the Defendants' inaction as an affirmative failure to act does not alter the passive nature of the alleged conduct." *Id.*

Here, in the third amended complaint, Plaintiffs allege the following purported "affirmative conduct of Defendants:"[4]

> (a) Affirmatively ordering Shawn Morcho into a holding cell at the Yeadon Borough Police Department when they knew he was not going to be monitored;
>
> (b) Affirmatively walking away from the cell when they knew Shawn Morcho would not be monitored;
>
> (c) Affirmatively choosing not to perform any type of pre-detainee screening including mental health screening, risk assessment, health screening, suicidal tendency screen and all other pre-detainee screenings, which are all required by state law and/or required by policy of Defendant Yeadon Borough;
>
> (d) Affirmatively choosing not to assign personnel to monitor Shawn Morcho either by reasonable cell checks or under reasonable monitoring by closed circuit video;
>
> (e) Affirmatively choosing not to monitor Shawn Morcho by reasonable cell checks or by closed circuit video;
>
> (f) Affirmatively choosing to have officers leave the station or otherwise purposely having the station understaffed;
>
> (g) Affirmatively and intentionally choosing to not perform any screening;

---

[4] In the third amended complaint, Plaintiffs lump all Defendants together, merely asserting that "Defendants" engaged in the list of affirmative acts. The third amended complaint, however, contains no allegations specific to any of the Individual Defendants other than Defendants Barr, Tokonitz, and Stephens.

(h) Affirmatively and intentionally choosing to disregard signs of distress in and potential for self-harm by Shawn Morcho;

(i) Defendant Burns affirmatively condoned, approved, acquiesced, tolerated, participated in and allowed all defendants behavior as described above to continue; [and]

(j) Other affirmative conduct, which can only be disclosed upon discovery.

(Third Am. Compl., ECF 38, at ¶ 115(a-j)).  Like the plaintiffs in *Morrow*, Plaintiffs attempt to characterize their claims as being based on affirmative acts of the Individual Defendants.  A fair reading of the third amended complaint, however, demonstrates otherwise.  At the heart of each of the above allegations is an omission or a failure to act.  Specifically, each allegation is premised on the Individual Defendants' failure to monitor Shawn's cell, failure to assign sufficient personnel to monitor the cell, and failure to perform any kind of pre-detainee screening.  Plaintiffs' attempt to frame the Individual Defendants' alleged conduct as affirmative acts by merely placing the word "affirmatively" before what clearly amount to omissions and/or failures does "not alter the passive nature of the alleged conduct." *Morrow*, 719 F.3d at 179.  Under the well-settled case law, such "omissions are insufficient to trigger substantive due process liability." *Kaucher*, 455 F.3d at 435.[5]  Absent allegations of actionable affirmative conduct by each of the Individual Defendants, Plaintiffs have not established viable claims under the state-created danger exception.

---

[5] As noted by the Third Circuit in *Bright*, it has "never found a state-created danger claim to be meritorious without an allegation and subsequent showing that state authority was *affirmatively exercised.*" 443 F.3d at 282 (emphasis added).  Further, "state actors cannot 'use their authority' to create such an opportunity by failing to act." *Id.* at n.6; *see also Brown v. Sch. Dist. of Phila.*, 456 F. App'x 88, 92 (3d Cir. 2011) (holding that a school district's "lack of affirmative action" was "fatal to [plaintiffs'] § 1983 claim"); *Kaucher,* 455 F.3d at 433, n.11 (collecting cases in which Third Circuit held that defendant's "failures to act cannot form the basis of a valid § 1983 claim").

*Deliberate Indifference Theory*

As correctly acknowledged by the Individual Defendants, Plaintiffs also assert their § 1983 claims against the Individual Defendants under the deliberate indifference theory. Defendants' only apparent challenge to Plaintiffs' claim under this theory is that Plaintiffs have not alleged any facts with respect to the Individual Defendants, other than Defendant Barr, who was responsible for Shawn's arrest.[6]

It is well established in the Third Circuit that the suicide of a pretrial detainee can form the basis of a deliberate indifference claim under § 1983. *Colburn v. Upper Darby Twp.* ("*Colburn II*"), 946 F.2d 1017 (3d Cir. 1991). To assert a viable § 1983 claim premised on a pretrial detainee's suicide, a plaintiff must allege facts sufficient to plausibly show: (1) the detainee had a particular vulnerability to suicide; (2) the custodial officer or officers knew or should have known of that vulnerability; and (3) those officers acted with reckless indifference to the detainee's particular vulnerability. *Palakovic v. Wetzel*, 854 F.3d 209, 223-24 (3d Cir. 2017). "The requirement of a 'particular vulnerability to suicide' speaks to the degree of risk inherent in the detainee's condition." *Colburn II*, 946 F.2d at 1024. "[T]here must be a strong likelihood, rather than a mere possibility, that self-inflicted harm will occur." *Id.* (citations omitted). However, "[e]ven where a strong likelihood of suicide exists, it must be shown that the custodial officials 'knew or should have known' of that strong likelihood." *Id.* "[I]t is not necessary that the custodian have a subjective appreciation of the detainee's 'particular vulnerability.'" *Id.* at 1024–25. "Nevertheless, there can be no reckless or deliberate indifference to that risk unless there is

---

[6] Defendants argue that a § 1983 claim premised on a suicide cannot be brought under a deliberate indifference theory, but rather must be brought under reckless indifference. This argument is misplaced. The Third Circuit has recognized that the two standards are the same. *See Williams v. Borough of W. Chester*, 891 F.2d 458, 464 n.10 (3d Cir. 1989); *see also Dimitris v. Lancaster Cnty. Prison Bd.*, 2002 WL 32348283, at *5 n.2 (E.D. Pa. June 7, 2007) ("We make no distinction between 'reckless indifference' and 'deliberate indifference' for the purpose of this summary judgment motion.").

11

something more culpable on the part of the officials than a negligent failure to recognize the high risk of suicide." *Id.* at 1025. As such, the "should have known" element:

> does not refer to a failure to note a risk that would be perceived with the use of ordinary prudence. It connotes something more than a negligent failure to appreciate the risk of suicide presented by a particular detainee, though something less than subjective appreciation of that risk. The strong likelihood of suicide must be so obvious that a lay person would easily recognize the necessity for preventative action; the risk of self-inflicted injury must not only be great, but also sufficiently apparent that a lay custodian's failure to appreciate it evidences an absence of any concern for the welfare of his or her charges.

*Id.* (citation and internal quotations omitted).

In their motion, the Individual Defendants do not direct any arguments at any of the three specific requirements set forth above. Instead, they merely assert that "[t]here is simply no basis to argue that others, including the police secretary, Patricia Scheerle, are responsible for this prisoner. No one other than Officer Barr took the decedent into custody and transported him back to the police station." (Defs'. Mot., ECF 41, at pp. 8-9). Construing this argument liberally, the Individual Defendants essentially argue that Plaintiffs have failed to allege facts to show the requisite personal involvement by any of the Individual Defendants other than Defendant Barr.

It is well-settled that for an individual defendant to be liable under § 1983, said individual must have had some personal involvement in the wrongdoing. *See, e.g.*, *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). As such, to assert a viable claim, "a plaintiff must allege facts sufficient to raise a plausible inference that the defendants were personally involved in violating the plaintiff's constitutional rights." *Thomas v. Barkley*, 2013 WL 4786124, at *6 (W.D. Pa. Sept. 6, 2013) (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1990-91 (3d Cir. 1995)); *see also Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (holding that the defendant "must have personal involvement in the alleged wrongs"). "Personal involvement can be shown through allegations of

12

personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207. These allegations "must be made with appropriate particularity." *Id.*; *see also Evancho*, 423 F.3d at 353 (affirming dismissal of a complaint that did not "contain even a remote suggestion that [the supervisor] had contemporaneous, personal knowledge of [the alleged constitutional violation] and acquiesced in it"). In a case involving a suicide, a plaintiff must allege facts sufficient to plausibly show, *inter alia*, that each individual defendant was aware of, or should have been aware of, the decedent's vulnerability to suicide and exhibited deliberate indifference to that vulnerability. *See McDonald-Witherspoon v. City of Phila.*, 2017 WL 3675408, at *6 (E.D. Pa. Aug. 25, 2017) (dismissing § 1983 claims against two officers where plaintiff failed to allege facts sufficient to plausibly show that each of the officers was aware of the vulnerability to suicide and acted with reckless indifference to the vulnerability).

As set forth above, Plaintiffs allege that the three Responding Officers (Defendants Barr, Takonitz, and Stephens) observed and/or were made aware of various facts that placed them on notice that Shawn was suffering from a mental health crisis, and that despite this information, the Responding Officers transported Shawn to prison (rather than to the treatment facility as requested by Shawn's mother) and placed him in a holding cell. Plaintiffs, however, do not allege any facts that could plausibly show that any of the other Individual Defendants—Defendants Burns, Ingram, Cesanek, Houghton, or Scheerle—were aware or even should have been aware of Shawn's vulnerability to suicide. Indeed, Plaintiffs expressly allege that the Responding Officers' observations **were not conveyed** to the other Individual Defendants:

> [Responding Officers] failed to communicate the officers' observations in transporting and interacting with Shawn Morcho in the vehicle on the way to the police station, and observations while at the station, to other employees, including Defendant Patricia Scheerle, and others who had the responsibility of monitoring at

> least the closed-circuit video of Shawn Morcho as well as to conduct personal inspection of his cell on a reasonable basis.

(Third Am. Compl., ECF 38, at ¶ 84).  In the absence of any such allegations, Plaintiffs have not met their pleading burden with respect to the requisite reckless indifference by these Individual Defendants to Shawn's particular vulnerability to suicide.  Accordingly, Plaintiffs' § 1983 claims against Defendants Burns, Ingram, Cesanek, Houghton, and Scheerle are dismissed.

Notably, Defendants concede throughout their motion that Plaintiffs' Fourteenth Amendment claim against Defendant Barr should survive.  (*See* Defs'. Mot., ECF 41, at pp. 8-9). Defendants base this concession on their acknowledgment that Officer Barr "took decedent into custody and transported him back to the police station." (*Id.*).  That concession, however, applies equally with respect to the other two Responding Officers, Defendants Takonitz and Stephens. Therefore, for the same reasons that Defendants concede that Plaintiffs have pled a Fourteenth Amendment claim against Officer Barr, Plaintiffs have also pled a Fourteenth Amendment claim against Officers Takonitz and Stephens.

### *Count III: Intentional Conduct Claim Under State Law Against All Individual Defendants*

At Count III of the third amended complaint, Plaintiffs assert claims for "intentional conduct" under Pennsylvania state law against all the Individual Defendants premised on the same conduct underlying their § 1983 claims.  Though Defendants are correct that there is no cause of action for "intentional conduct," Count III can be construed as Plaintiffs' attempt to assert unspecified claims for intentional torts.  Even so construed, however, Plaintiffs have not alleged any facts to support any intentional torts.  Accordingly, Defendants' motion to dismiss Count III is granted.

### *Count IV: Inadequate Supervision Claims Under § 1983*
### *Against All Individual Defendants*

At Count IV of the third amended complaint, Plaintiffs assert § 1983 claims against all Individual Defendants for "inadequate supervision." Underlying these purported claims are Plaintiffs' allegations that the Individual Defendants failed to adequately supervise Shawn while he was detained. As Defendants correctly argue, there is no cognizable § 1983 claim for inadequate supervision of a detainee separate from that asserted in Count I of the third amended complaint. Plaintiffs' reliance on *S.M. v. Lincoln Cnty.*, 874 F.3d 581 (8th Cir. 2017) to suggest otherwise is misplaced. In *S.M.*, the court addressed a *Monell* claim against a municipality premised upon the municipality's failure to adequately supervise one of its *employees*, not a detainee. *Id.* at 584. There is no legal support for a § 1983 claim premised on the failure to supervise a detainee, separate from the ordinary § 1983 claims asserted in Count I. Accordingly, Defendants' motion to dismiss Count IV is granted with respect to all Individual Defendants.

### *Count VI: Negligence Claim Based on the Real Property Exception*
### *Against All Defendants*

At Count VI of the third amended complaint, Plaintiffs assert a negligence claim against all Defendants under the *real property exception* to the governmental immunity provided by the Pennsylvania Political Subdivision Tort Claims Act (the "Tort Claims Act"), 42 Pa. Cons. Stat. § 8541. Defendants argue that Plaintiffs' negligence claim, as pled, does not fall within the narrow real estate exception. This Court agrees.

The Tort Claims Act provides a general cloak of immunity for local governmental units and their employees. 42 Pa. Cons. Stat. § 8541. However, the real estate exception at § 8542(b)(3) permits a cause of action for injuries arising out of "the care, custody or control of real property in the possession of the local agency. . . ." *Id.* at § 8542(b)(3). Because § 8542(b)(3) is an exception

15

to the general rule of governmental immunity, it must be strictly construed and narrowly interpreted. *Mascaro v. Youth Study Ctr.*, 523 A.2d 1118, 1123 (Pa. 1987). In the seminal case interpreting this exception, the Supreme Court of Pennsylvania held that "the real estate exception can be applied only to those cases where it is alleged that the artificial condition or defect of the land itself causes the injury, not merely when it facilitates the injury by the acts of others, whose acts are outside the statute's scope of liability." *Id.* at 1124.

In *Harding v. Galyias*, 544 A.2d 1060 (Pa. Commw. Ct. 1988), the Commonwealth Court of Pennsylvania addressed claims, similar to those asserted here, brought under the real estate exception. The *Harding* Court described the allegations as follows:

> The injury for which Appellants seek compensation in these cases is death. The act which resulted in death was suicide by hanging. Each act was committed by Scott Harding and Christopher Cooper themselves. The condition of the jail facilities may have made it easier for the hanging to be accomplished, but the condition of the jail facilities themselves did not cause the death of either Scott Harding or Christopher Cooper.

*Id.* at 1065. Relying on *Mascaro*, the court concluded, as a matter of law, that the claims did not fall within the real estate exception. *Id.*

Here, Plaintiffs' negligence claims against Defendants are identical to those in *Harding*. As such, Plaintiffs have not alleged that the design, defect, or condition of the holding cell *itself* caused Shawn's death. Rather, at best, Plaintiffs have alleged that the condition of the cell facilitated Shawn in taking his own life. As a matter of law, such claim falls outside the limited real estate exception. Accordingly, Defendants' motion to dismiss is granted as to Count VI.

### *Count V: Wrongful Death and Survivor Act Claims Against All Defendants*

At Count V of the third amended complaint, Plaintiffs bring claims against all Defendants under the Pennsylvania Wrongful Death Act, 42 Pa. Cons. Stat. § 8301 *et seq.*, and the

Pennsylvania Survivor Act, 42 Pa. Cons. Stat. § 8302 *et seq*. In their motion to dismiss, Defendants correctly argue that these statutes do not provide substantive causes of action, but rather provide the means by which an estate or survivor can seek remedies for unlawful conduct that results in death. *See Johnson v. City of Phila.*, 105 F. Supp. 3d 474, 483 (E.D. Pa. 2015). Because wrongful death and survival actions are not independent causes of action, a plaintiff asserting these claims must assert some other independent, cognizable claim to survive a motion to dismiss the wrongful death and survival claims. *Lansberry v. Altoona Area Sch. Dist.*, 356 F. Supp. 3d 486, 504 (W.D. Pa. 2018). For the reasons discussed above, Plaintiffs have asserted cognizable § 1983 claims against Defendants Barr, Tokonitz, and Stephens. Notably, Defendant Yeadon Borough has not moved to dismiss the *Monell* claim against it. Accordingly, Defendants' motion to dismiss Count V is denied as to Defendants Barr, Tokonitz, Stephens, and Yeadon Borough. Because Plaintiffs have not alleged a viable claim against any of the other Individual Defendants, Count V is dismissed *only* as to Defendants Burns, Ingram, Cesanek, Houghton, and Scheerle.

### *Qualified Immunity*

Defendants argue that, except for Defendant Barr, the remaining Individual Defendants are entitled to qualified immunity based on their lack of involvement with Shawn prior to his suicide. As set forth above, only Plaintiffs' claims against the Responding Officers survive Defendants' underlying motion to dismiss. Thus, this Court need only address Defendants' qualified immunity argument as to the Responding Officers.

Qualified immunity is an affirmative defense that shields government officials from personal liability for civil damages. *Lane v. Franks*, 134 S. Ct. 2369, 2381 (2014). "Under this doctrine, courts may not award damages against a government official in his personal capacity unless 'the official violated a statutory or constitutional right,' and 'the right was 'clearly

17

established' at the time of the challenged conduct.'" *Id.* (citations omitted). To determine whether a defendant is entitled to qualified immunity, a court must consider: (1) whether the defendant violated a constitutional right; and (2) whether the right was clearly established, such that it would have been clear to a reasonable person that the conduct was unlawful under the circumstances. *Lamont v. New Jersey*, 637 F.3d 177, 182 (3d Cir. 2011) (citing *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001)). In making this determination, the court must view the facts "in the light most favorable to the party asserting the injury." *Scott v. Harris*, 550 U.S. 372, 377 (2007). The defendant seeking to invoke qualified immunity, however, bears the burden of showing its applicability. *Halsey v. Pfeiffer*, 750 F.3d 273, 288 (3d Cir. 2014).

While qualified immunity "'should be considered at the earliest possible state, a genuine issue of material fact may preclude' dismissal on qualified immunity." *Womack v. Smith*, 2009 WL 5214966, at *4 (M.D. Pa. 2009) (citing *Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002)). "Qualified immunity shall be upheld on a 12(b)(6) motion only when the defense is established on the face of the complaint." *Id.* (internal quotations and citation omitted); *see also Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009) (cautioning "that it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases").

In their motion, Defendants essentially argue that the Responding Officers are entitled to qualified immunity because Plaintiffs have not alleged facts to plausibly show that the Responding Officers had the requisite knowledge of Shawn's vulnerability to suicide.[7] As discussed, however, Defendants concede that Plaintiffs have asserted a viable § 1983 claim against Defendant Barr. Further, the factual underpinnings of Plaintiffs' claims against Defendant Barr are the same as

---

[7] Though briefly reciting the two requirements for qualified immunity, Defendants do not provide any argument with respect to the "clearly established" prong.

those underlying their claims against Defendants Tokonitz and Stephens. Thus, at this stage of the proceedings, Plaintiffs have asserted viable § 1983 claims against Defendants Barr, Stephens, and Tokonitz. Therefore, Defendants' motion to dismiss on the basis of qualified immunity is denied.

**CONCLUSION**

For the reasons set forth, Defendants' motion to dismiss is *granted* with respect to: (1) all claims asserted against Defendants Burns, Ingram, Cesanek, Houghton, and Scheerle at Counts I III, IV, V, and VI of the third amended complaint; (2) all claims asserted against Defendants Barr, Tokonitz, and Stephens at Count I premised on the state-created danger theory; and (3) all claims against asserted against all Defendants at Counts III, IV, and VI.

Defendants' motion to dismiss is *denied* with respect to the claims asserted against Defendants Barr, Tokonitz, and Stephens at Counts I and V of the third amended complaint, premised on the deliberate indifference/reckless indifference theories. An Order consistent with this Memorandum Opinion follows.

Since Defendants did not move to dismiss Plaintiffs' Fourteenth Amendment claim against Defendant Barr at Count I nor the *Monell* claim against Yeadon Borough at Count II of the third amended complaint, these claims remain.

*NITZA I. QUIÑONES ALEJANDRO*, J.